UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| STATE OF CONNECTICUT, COMISSIONER OF LABOR, SCOTT D. THE LABOR COMMISSIONER,<br>        Plaintiff,<br><br>v.<br><br>YP ADVERTISING & PUBLISHING LLC,<br>        Defendant. | No. 3:16-cv-1424 (MPS) |

**Ruling on Motion to Remand and for Summary Judgment**

Invoking a state statute governing the payment of wages, the Connecticut Labor Commissioner sued in state court to collect commissions that YP Advertising & Publishing LLC ("YP) allegedly owes its two former employees for sales they made before leaving YP, but for which it received payment after they left.  YP removed the case to this Court, arguing that this Court has federal question jurisdiction because the case requires it to interpret a collective bargaining agreement ("CBA") between YP and the former employees' union, and thus is "completely preempted" by section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185 ("LMRA").  That provision confers jurisdiction on federal courts in certain suits involving CBAs, even when the complaint makes no mention of the CBA or federal law.  YP also moves to dismiss or, alternatively, for summary judgment, arguing that the commission dispute asserted in the complaint falls within the binding grievance and arbitration provisions of the CBA and that the former employees failed to exhaust those remedies.

I agree with YP on both counts.  Resolution of this dispute would require "substantial interpretation" of the CBA and thus, under the complete preemption doctrine applicable in LMRA cases, the complaint raises a federal question even though it is pled as a violation of state law.  The Labor Commissioner's motion to remand [ECF No. 18] the case to state court is

1

therefore DENIED. In addition, the dispute over commissions raised in the complaint plainly falls within the CBA's grievance and arbitration provisions, and there is no evidence in the record that the former YP employees have exhausted the CBA's remedies. YP's motion for summary judgment is therefore GRANTED. YP's alternative motion to dismiss under Rule 12(b)(6) is DENIED as moot.

## I.   Factual Background

### A.   The Complaint's Allegations

YP "employed Victoria M. Schneider from August 8, 2005 through August 19, 2014, and Diane P. Soreca from February 2007, through May 8, 2015." (ECF No. 1 at 6.) "Victoria Schneider and Diane Soreca filed complaints with the [Commissioner] on March 5, 2015, and September 1, 2015, respectively, seeking assistance in obtaining payment from [YP] for unpaid wages." (*Id*.) "Upon investigation of said complaints, the [Commissioner]… determined that [YP] owe[d] wages to Victoria Schneider in the total amount of $25,508.78 and Diane Soreca in the total amount of $18,905.43, consisting of, inter alia, commissions on sales by them prior to their terminations but paid by customers after their termination." (*Id*. at 7) The Labor Commissioner alleges that YP owes Schneider and Soreca unpaid wages in the combined amount of $44,414.21. "By authority of Conn. Gen. Stat. § 31–72, the [Commissioner] seeks to collect double damages….together with reasonable attorney's fees, costs and interest from the date the payments should have been received from [YP]." (*Id*.)

### B.   The CBA

YP provides advertising services and products to businesses, and employs a team of sales representatives to sell its products and services to existing and prospective customers. (ECF No. 1 at 44-45, 73.)

Although the complaint makes no reference to a CBA, YP filed a CBA between YP Connecticut Information Services LLC and the Communication Workers of America (the "Union") with its removal papers, and the Labor Commissioner does not dispute its authenticity or applicability in this case.[1]  (ECF No. 18 at 1-2.)  Nor does the Labor Commissioner dispute that Schneider and Soreca were YP sales representatives and members of the Union at the relevant times.  (ECF No. 14 at 1.) [2]  The CBA, dated April 8, 2012, governed the terms and conditions of Schneider's and Soreca's employment, including wages and commissions.  The CBA makes the Union "the sole bargaining agent in all matters pertaining to rates of pay, wages, hours and working conditions for all [of YP's sales representatives]."  (ECF No. 7 at 25.)

The CBA contains detailed and complex rules regarding sales representatives' compensation, including commissions.  (ECF No. 7 at 54-81.)  Section 1 of Article XXV provides for the calculation of the sales representatives' commissions based on rate tables and "Commissionable Business," which is defined as "the monthly revenue value of the business accounts assigned to [the sales representative], accepted by the Company, published in each applicable Company product, and sold by a commissioned [sales representative]."  (ECF No. 7 at 54.)  "To be considered Commissionable Business," "(1) [t]he advertising item must be sold by the [sales representative] on an account assigned to him/her," and "(2) [t]he account/advertising item must be accepted by the Company, and the advertising item must be published in the

---

[1] YP's former name was YP Connecticut Information Services LLC.  (ECF No. 8 at 1.)
[2] The Labor Commissioner failed to file a Local Rule 56(a)2 Statement admitting or denying the specific facts set forth in YP's Local Rule 56(a)1 Statement.  I therefore consider the facts contained in YP's Statement and supported by evidence in the record to be undisputed for the purposes of the motion summary judgment.  D. Conn. L. R. 56(a)1("There shall be annexed to a motion for summary judgment a document entitled 'Local Rule 56(a)1 []'….All material facts set forth in said statement and supported by the evidence will be deemed admitted unless controverted by the statement required to be filed and served by the opposing party in accordance with Local Rule 56(a)2.").

applicable Company product and … meet Company standards and specifications." (*Id*.) "[C]ommissions are not due and payable until all of [the Commissionable Business] criteria have been met." (*Id*. at 71-72.) Until commissions are earned, any commission payments made to employees under the CBA "are advances to be applied against employees' future earned commissions." (*Id*. at 72) Therefore, "[a]ll references to commissions in [the CBA] are to commission advances until the commissions become earned." (*Id*.) Under the CBA, advances are paid on a biweekly basis in accordance with the following schedule:

> (i) "Milestone 1: 40% of the total commission due will be paid in the next pay period after the sale is closed;"
>
> (ii) "Milestone 2: 15% of the total commission due will be paid in the next pay period once the Billing Milestone Date ("BMD") is met.  The Customer must be 90 days or less past due on their account at BMD in order for this payment to be released;"
>
> (iii) "Milestone 3: 30% of the total commission due will be paid if the customer is 90 days or less past due on their total account on the next pay period end that falls after 120 [days] has elapsed from the [BMD];"
>
> (iv): "Milestone 4: The final 15% of the total commission due will be paid if the customer is 90 days or less past due on their total account 240 days after the [BMD];" and
>
> (v) "Once an account reaches 540 days from the [BMD], any unreleased commissions are forfeited."

(*Id*. at 66-67.) The BMD is defined as:

> The date any item that is part of the [Next Issue Service Delivery] for the current year canvass/cycle is considered ready to bill.  This is the earlier of the Internet Live Date or the Effective Bill Date.  This date becomes the baseline to calculate future milestone dates for that customer.  This date will be locked and never move to a later date as long as the item actually bills on that date (i.e., does not "wash").  This date could move earlier if an early-up billing item was sold as subsequent activity.

(*Id*. at 56.)

The CBA further provides:

> If an employee has not earned all commission advances at the time the employees' employment with [YP] terminates, either voluntarily or involuntarily, [YP] is authorized

to deduct the unearned portion of the commission advances from the employee's final pay check.

(*Id*. at 73.)  The CBA prohibits such deductions if the sales representative was "service pension eligible and retire[d] from the business with a service pension"; such a sales representative is entitled to her "As Earned Commission." (*Id*. at 74.)

The CBA contains a grievance procedure in Article XIV, which reads in part:

> In the event differences arise between [YP] and any of its employees or the Union as to the application, interpretation and administration of matters subject to the provisions of this Contract, provided the complaint is reduced to writing and delivered by a union representative within one hundred and eighty (180) days of the action complained of shall be considered and handled as a formal grievance.

(*Id*. at 43.)[3]  Article XIV of the CBA provides that if a grievance is "not settled then either of the parties may request arbitration as prescribed in Article XXII of the Contract." (*Id*.)  Under Article XXII, "[t]he decision of any arbitrator selected in accordance with Section 2, hereof, shall be final, and the parties agree to be bound and to abide by such decision." (*Id*.)  Article XXII provides that differences between the Union and YP are arbitrable, once the grievance procedure has been exhausted, if they pertain to:

> "a. [T]he true intent and meaning of any specific provision or provisions thereof (except as such provision or provisions relate, either specifically or by effect, to prospective modifications or amendments of such agreement), or"

> "b. [T]he application of any provision or provisions thereof to any employee or group of employees, and grievances arising from such application, or"

> "c. [T]he dismissal for just cause of any noncommission employee with more than six (6) months net credited service, or, the dismissal for just cause of any commission employee,…with more than two (2) completed years' net credited service, or"

---

[3] Although this sentence is grammatically incorrect – and not a model of clarity --, the Labor Commissioner does not dispute that it requires the parties to submit disputes within its scope to the CBA's grievance procedures. (ECF No. 29 at 4-5.)

"d. [T]he disciplinary suspension for just cause of any noncomission employee, or the disciplinary suspension for just cause of any commission employee,…with more than two (2) completed years' net credited service."

(*Id*. at 49.)

## II.     Labor Commissioner's Motion to Remand to State Court

### A.     Legal Standards

#### 1.     *Removal*

Generally, a case may be removed to federal court "only if it could have originally been commenced in federal court on either the basis of federal question jurisdiction or diversity jurisdiction." *Citibank, N.A. v. Swiatkoski,* 395 F.Supp.2d 5, 8 (E.D.N.Y. 2005)(citing 28 U.S.C. § 1441(a)); *see also* 28 U.S.C. § 1441.  If a federal district court determines that it lacks subject matter jurisdiction over a case removed from state court, it must remand the case. 28 U.S.C. § 1447(c). "When a party challenges the removal of an action from state court, the burden falls on the removing party to establish its right to a federal forum by competent proof." *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 00-cv-1898, 2006 WL 1004725, at *2 (S.D.N.Y. Apr. 17, 2006)(internal quotation marks and citations omitted).

The Court may consider all facts in the record at the time of removal in deciding whether it has jurisdiction.  *See Luo v. Mikel*, 625 F.3d 772, 776 (2d Cir. 2010)(a court may consider representations of counsel at time of removal to decide whether amount in controversy requirement satisfied for diversity jurisdiction); *see also Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848, 851 (5th Cir. 1999)("[W]e must evaluate the facts supporting jurisdiction as of the time of removal and therefore may not consider the entire post-removal record …."). Here, those

6

facts include the CBA, as well as the undisputed facts in YP's Local Rule statement, all of which were filed at the time the case was removed. (*See* ECF Nos. 1, 6, 7 and 8).[4]

### 2. Artful Pleading and Complete Preemption

As noted above, the complaint in this case makes no mention of federal law, and asserts only a violation of a Connecticut wage statute, Conn. Gen. Stat. § 31-72(a). This would ordinarily defeat federal jurisdiction under the "well-pleaded complaint rule," "which dictates that federal subject-matter jurisdiction can be founded only on those allegations in a complaint that are well pleaded." *Sullivan v. Am. Airlines,* 424 F.3d 267, 271 (2d Cir. 2005). The rule requires courts to "disregard allegations that a well-pleaded complaint would not include [such as] allegations about anticipated defenses." *Id.*

---

[4] The Second Circuit's decision in *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192 (2d Cir. 2013) is not to the contrary. That decision held that, on "a [Rule 12(b)(6)] motion for failure to state a claim," the court could not consider a CBA that was not referred to in the pleadings without converting the motion to one for summary judgment. *Id.* at 203 ("We cannot affirm the dismissal on the basis of LMRA preemption pursuant to Rule 12(b)(6) because such dismissal was premised on matter outside of the pleadings, and was, therefore, inappropriate."). Here, although YP did file a Rule 12(b)(6) motion, I have denied that motion as moot. Further, a finding of LMRA preemption was unnecessary to support federal jurisdiction in *Nakahata*, as there were other federal claims. That decision thus did not alter the long-standing rule that a federal court may consider all facts in the record in deciding its jurisdiction. *See, e.g.*, *Darden v. DaimlerChrysler North America Holding Corp.*, 191 F. Supp.2d 382, 387 (S.D.N.Y. 2002)("[A] Court must look to matters outside the complaint to determine whether it has jurisdiction."); *Nyamtsu v. Melgar*, 2013 WL 6230454, at *1 n.1 (S.D. Tex. Dec. 2, 2013)("In making a jurisdictional determination, the court may consider evidence of record and may receive affidavits, deposition testimony, or live testimony concerning the citizenship of the parties."); *Colorado Environmental Coalition v. Office of Legacy Mgmt.*, 819 F. Supp.2d 1193, 1202 (D. Colo. 2011)("While a court's review of the merits in an APA case is generally limited to the administrative record, a court may consider extra-record materials for purposes of determining whether it has jurisdiction over the matter before it."); *Llano Financing Grp., LLC v. Bannec*, 2016 WL 739278, at *2 (N.D. Ind. Feb. 25, 2016)("In addition to any jurisdictional allegations, the court may consider any evidence in the record that may help determine whether there is subject-matter jurisdiction.").

This case, however, involves the possible application of an exception to the rule known as the "artful pleading doctrine," under which "a plaintiff may not defeat federal subject-matter jurisdiction by artfully pleading his complaint as if it arises under state law where the plaintiff's suit is, in essence, based on federal law." *Id.* (internal quotation marks omitted). If the court determines that a complaint has been artfully pleaded, it may uphold a defendant's removal of the case to federal court "even though no federal question appears on the face of the plaintiff's complaint." *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998). "The artful-pleading doctrine includes within it the doctrine of complete preemption," under which "certain federal statutes are construed to have such extraordinary preemptive force that state-law claims coming within the scope of the federal statute are transformed, for jurisdictional purposes, into federal claims—i.e., completely preempted."[5] *Sullivan*, 424 F.3d at 272. "When a plaintiff raises such a completely preempted state-law claim in his complaint, a court is obligated to construe the complaint as raising a federal claim and therefore arising under federal law." *Id*. (internal quotation marks and citation omitted).

    3.    *Section 301 of the LMRA*

Section 301 of the LMRA, 29 U.S.C. § 185 which provides that "[s]uits for violation of [CBAs] … may be brought in any [federal district court] having jurisdiction of the parties, without respect to the amount in controversy or without regard to citizenship of the parties," is one of three federal statutes the Supreme Court has found to have the "extraordinary preemptive

---

[5] Complete preemption is distinct from ordinary preemption, which does not provide a basis for federal matter jurisdiction. *Caterpillar Inc. v. Williams,* 482 U.S. 386 393 (1987)("[I]t is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue.").

force" necessary for complete preemption. *Id.* (citation omitted); *see also Vera v. Saks & Co.*, 335 F.3d 109, 114 (2d Cir. 2003)("Thus, even though the parties agree that plaintiff's well-pleaded complaint alleges on its face only state claims, and no one argues that diversity of citizenship exists between the parties, if plaintiff's state claims are preempted by section 301, federal jurisdiction exists and the removal of his case was proper.")(internal quotation marks omitted). "The Supreme Court has interpreted section 301 as a congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts." *Id.* (internal quotation marks and citation omitted). "Questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort." *Id.* (alterations, internal quotations marks, and citation omitted). "When resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law." *Id.* (alterations, internal quotation marks and citation omitted). "[W]here resolution of a state-law claims depends on *interpretation* of the collective bargaining agreement, the claim is pre-empted." *Wynn v. AC Rochester*, 273 F.3d 153, 157 (2d Cir. 2001)(emphasis in original).

"Not every suit concerning employment or tangentially involving a CBA, however, is preempted by Section 301." *Vera*, 335 F.3d at 114. Where "a state prescribes rules or establishes rights and obligations that are independent of a labor contract, actions to enforce such independent rules or rights would not be preempted by section 301." *Id.* Similarly, a state-law claim is not preempted if there is "mere referral to [a collective bargaining agreement] for information such as

rate of pay and other economic benefits that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled." *Id*. (internal quotation marks and citation omitted). Thus, I must determine whether the Labor Commissioner's state-law wage claims are independent of the rights established by the CBA or "inextricably intertwined with consideration of the terms of the labor contract." *Allis-Chalmers v. Lueck*, 471 U.S. 202, 213 (1985).

### B.     Discussion

While the distinction "between claims requiring interpretation of a [collective bargaining agreement] and ones that merely require such agreement to be consulted is elusive," *Wynn*, 273 F.3d at 157, the complaint and the CBA make clear that resolution of this case will be "substantially dependent upon analysis of the terms" of the CBA and thus that YP properly removed the case under the complete preemption doctrine. *Vera*, 335 F.3d at 113. As noted, the complaint alleges that YP "owes wages to Victoria Schneider in the total amount $25,508.78 and Diane Soreca in the total amount of $18,905.43, consisting of, inter alia, commissions on sales by them prior to their terminations but paid for by customers after termination," and seeks to collect twice the amount of those wages under Conn. Gen. Stat. § 31-72. That statute permits the Labor Commissioner to sue an employer to "recover twice the full amount of unpaid wages," Conn. Gen. Stat. § 31-72, with wages defined as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis of calculation." Conn. Gen. Stat. § 31-71a(3). The complaint makes no allegations about the basis for the assertion that YP "owes" Schneider or Soreca the commissions, and thus it is necessary to refer to the agreement governing the payment of those commissions to assess that assertion. That agreement is the CBA, which, as discussed above, sets forth detailed, complicated provisions for determining whether and to what extent a YP sales representative has "earned" commissions and thus whether

10

and to what extent YP has committed to pay them. (*See, e.g.*, ECF No. 7 at 71)("[C]ommissions are earned by employees only when the final commission rate and contract price applicable to a sale are determined by the Company, and all of the conditions to earn commissions have been satisfied.")  The CBA also includes provisions authorizing YP to recover commission payments made to employees – all of which are treated as "commission advances" under the CBA until they are "earned" by the employee and the contract price and commission rate are final.  For example, YP may recover commissions advanced to an employee if the customer cancels the advertising contract before the advertisement is published. (ECF No. 7 at 73.)  Finally, as noted above, except for employees who are "service pension eligible," employees who are terminated (voluntarily or involuntarily) forfeit unearned commissions, and YP may deduct the unearned portion of any commission advances from the final paycheck. (*Id*. at 71.)

Because the complaint alleges that the commissions at issue relate to sales made before Schneider and Soreca were terminated, but for which payment was received after their termination, I would need to determine whether the two women satisfied all the conditions of the CBA to "earn" the commissions before termination to decide whether or not YP "owes" them the commissions, as the complaint alleges. *See Levy v. Verizon Information Services, Inc.*, 498 F. Supp.2d 586, 598 (E.D.N.Y. 2007)(finding complete preemption under § 301 of the LMRA where "the court would have to analyze the CBA language to decide whether incentive compensation was actually *earned* ….")(emphasis in original).  This would entail, first and foremost, determining what those conditions are, which would require me to scrutinize the nearly thirty pages of the CBA that govern commissions.  I would then have to determine whether, for example, each of the "milestones" for commission advances had been satisfied and whether there were any circumstances that permitted YP to recover commission advances under the CBA. (ECF No. 7 at 54-83.)  Contrary to the Labor

Commissioner's assertion, the provisions of the CBA governing commissions are not "very straightforward" (ECF No. 18-1 at 2) – they include a series of lengthy definitions, "milestones" at which certain percentages of commissions are paid, different commission arrangements depending on seniority and title, a series of "commission recovery" provisions, and other detailed provisions. (ECF No. 7 at 54-74.) Even a cursory review of those provisions makes clear that determining whether a particular commission was "earned" would require a great deal more engagement with the CBA than "mere referral to the CBA for information such as rate of pay … that might be helpful in determining … damages." *Vera*, 335 F.3d at 115. Judge Droney reached the same conclusion in a similar case involving a similar CBA governing commissions for sales representatives of SNET: "the Court would have to analyze the specific terms of the extensive compensation provisions of the CBA …, such as commissionable business, new business accounts, advancements of commissions, and recovery of advanced commissions, to determine whether the Plaintiffs earned the commissions they seek in this case. That effort is hardly the mere reference to a list of wage rates permitted in [another case]." *Puccino v. SNET Information Svcs., Inc.*, 2011 WL 4575937 , at *7 (D. Conn. Sept. 30, 2011).

Further, because the complaint simply alleges that YP has failed to pay commissions it "owes" its two former employees, there is no substantive source of law other than the CBA to which I could turn to discern whether YP has violated Conn. Gen. Stat. § 31-72, a statute that does no more than require the payment of wages due under an agreement between an employer and an employee (or the union representing the employee). Conn. Gen. Stat § 31-72 ("When any employer fails to pay an employee wages in accordance with the provisions of sections 31-71a to 31-71i, inclusive, …. the Labor Commissioner may bring" suit); § 31-71b (governing manner and timing of employer's payment of "all wages … or other compensation due"). Indeed, the

12

Connecticut Supreme Court has repeatedly held that Section 31-72 merely provides a remedy for violations of an existing wage agreement, and confers no rights above and beyond the agreement. *Geysen v. Securitas Sec. Svcs. USA, Inc.*, 322 Conn. 385, 393-94 (2016)("Section 31-72 is …a remedial statute rather than one creating independent substantive rights….The wage agreement is not dictated by the [wage] statutes; instead, it is the integrity of that wage agreement that is protected by the statutory provisions.")(internal quotation marks omitted); *Mytych v. May Dept. Stores Co.*, 260 Conn. 152, 165, 162 (2002)(holding that "the commission agreement is controlling" and noting that Section 31-72 "does not embody substantive standards to determine the amount of wages that are payable but provides penalties in order to deter employers from deferring wage payments once they have accrued")(internal quotation marks omitted.)[6]  In short, the substantive rights to "wages owed" that the Labor Commissioner is seeking to enforce do not exist independently of the CBA.  *See Levy*, 498 F.Supp.2d at 596 ("If the right exists solely as a result of the CBA, and not by virtue of state law, then the claim is preempted, and the analysis ends there.").

---

[6] The Labor Commissioner misreads *Tianti v. William Raveis Real Estate, Inc.*, 231 Conn. 690 (1995) and *Commissioner of Labor v. Wall*, 69 Conn. App. 450 (2002) to suggest that an employer's failure to pay an employee for sales for which payment is received after the employee's termination violates an independent public policy embodied in Conn. Gen. Stat. § 31-72.  (ECF No. 18-1 at 8-9, 11-12.) Neither case stands for that proposition, and both are consistent with the notion that Section 31-72 creates a remedy, rather than substantive rights to particular compensation arrangements.  *Tianti* involved only the questions whether a real estate agent, under the facts of that case, was an "employee" for purposes of Section 31-72, and whether the trial court had reasonably inferred from the evidence that certain transactions had closed before the real estate agent left her employer – a condition of her receiving commissions under her employment agreement. *Wall* upheld factual determinations by the trial court about the content of the employment agreement at issue, whether the agreement was violated, and whether the damages award was proper.  Neither case suggests that particular types of commission arrangements violate a substantive standard in Section 31-72 or some other embodiment of public policy.

In his motion to remand, the Labor Commissioner argues that YP has made deductions from commission advances paid to Schneider and Soreca, and that those deductions violate Conn. Gen. Stat. § 31-71e, which prohibits employers from "withhold[ing] or divert[ing] any portion of an employee's wages unless", among other things, "the employer has written authorization from the employee for deductions…." (*See* ECF No. 18-1 at 7).  This argument suffers from three flaws. First, it adds facts that appear neither in the complaint, which alleges only that YP failed to pay commissions owed on certain sales, nor the summary judgment record.  The complaint makes no reference to deductions, and the Labor Commissioner has not disputed any of the facts submitted in YP's Local Rule 56(a)(1) statement, which likewise make no reference to deductions. (*See* note 2, *supra*.)

Second, even assuming the complaint alleged – or I could reasonably infer – that YP deducted unearned commissions from Schneider's and Soreca's final paycheck, as it was expressly allowed to do under Paragraph 10.f. of Article XXV of the CBA (ECF No. 7 at 73), such deductions would not violate Connecticut law.  The Labor Commissioner's argument to the contrary is foreclosed by *Mytych*, in which the Connecticut Supreme Court expressly held that Conn. Gen. Stat. § 31-71e, like Conn. Gen. Stat. § 31-72, creates no substantive rights apart from the employee's wage agreement.  *Mytych*, 260 Conn. at 160 ("[§ 31-71e] does not purport to define the wages due; it merely requires that those wages agreed to will not be withheld for any reason. Accordingly, we conclude that [§ 31-71e and 31-73(b), which also bars deductions of wages "agreed to be paid"] are not substantive in nature.").  The Labor Commissioner's attempt to confine *Mytych* to its facts fails to take account of the language used by the Connecticut Supreme Court in its decision. (*See* ECF No. 18-1 at 14.)

Third, even if the provision in the CBA authorizing deductions of unearned commissions upon an employee's departure did raise a possible violation of Connecticut law, there would still be complete preemption. In *Vera*, the Second Circuit found complete preemption under section 301 of the LMRA where the plaintiff claimed that a provision in a CBA violated state law. Specifically, the plaintiff claimed that a provision allowing the employer to deduct from the sales representative's commissions a percentage of "unidentified returns," i.e., returns of product where the customer did not have a receipt and the sales representative could not be identified, violated a New York statute prohibiting certain wage deductions. 335 F.3d at 112-13. "In [the Second Circuit's] view, plaintiff's challenge to the lawfulness of a term of the CBA will require substantial interpretation of the CBA." *Id.* at 116. The same is true here. The Labor Commissioner takes the position that the CBA provision authorizing deductions from the final paycheck of the portion of a commission advance the employee "has not earned" at the time of termination (ECF No. 7 at 73) amounts to a forfeiture in violation of public policy because it is "unrelated to the completion of sales." (ECF No. 18-1 at 11-12). Assuming this raised a plausible claim of illegality, I would have to interpret the CBA to decide whether any of the steps it specified to "earn" a commission remained unfulfilled at the time of the employee's termination and, if so, whether any of them related to "completion of sales." The claim of illegality would thus hinge on "substantial interpretation of the CBA."

The Labor Commissioner relies on a California state court decision, *Sciborksi v. Pacific Bell Directory*, 205 Cal. App. 4th 1152 (2012), but that case is distinguishable on both the facts and the law. In *Sciborksi*, it was undisputed that the plaintiff's claim arose from an independent source of state law, i.e., a state statute, rather than from the CBA. 205 Cal. App. 4th at 1165-66. Further, the CBA included no express provision allowing the employer to make the contested

15

deduction. *Id.* at 1170 ("No interpretation of the CBA was necessary to resolve this claim….[T]here was nothing in [the CBA or documents incorporated in it by reference] providing that [the employer] was permitted to deduct amounts from an employee's wages based on the employer's clerical error in the account assignment process."). The court in *Sciborski* distinguished the Second Circuit's decision in *Vera* in part on that basis. *Id.* at 1173-74 (noting that while, in *Vera*, the CBA "contained an express provision that the retailer would charge back against commissions all unidentified returns at the store," "[h]ere, there was no express provision providing that Pacific Bell could charge back against commissions amounts earned after an account had been improperly assigned based on the employer's clerical error"). Finally, in concluding that the "implied provision" of the CBA on which the employer had relied to deduct the employee's wages violated California law, *Sciborski* relied on a notion of wage entitlement that the Connecticut Supreme Court has found incompatible with the Connecticut wage statutes. *Compare id.* at 1168 ("But an employer may not require an employee to agree to a wage deduction in the guise of recouping an advance based on conditions that are unrelated to the sale and/or that merely reflect the employer's attempt to shift the cost of doing business to an employee (citing *Hudgins v. Neiman Marcus Group, Inc.*, 34 Cal. App. 4th 1109, 41 Cal. Rptr. 2d 46 (1995)); *with Mytych*, 260 Conn. at 164-65 ("The reasoning of *Hudgins* is unpersuasive when applied to our wage payment statutes….*Hudgins*… relies on a long history of California case law and regulatory opinions establishing that an employee's right to a commission accrues or vests at the time of the actual sale…In Connecticut, there is no such settled doctrine regarding the time at which an employee's rights to his wages vests and, in fact, we have concluded herein that our wage payment statutes expressly leave the timing of accrual to the determination of the wage agreement between the employer and employee.").

In a final effort to resist federal jurisdiction, the Labor Commissioner argues that further factual development is required to determine whether or not the case will require interpretation of the CBA. (ECF No. 29 at 2 ("Whether there are any issues of interpretation … remains a question for factual discovery.")). But on a motion to remand, the court assesses jurisdiction at the time of removal. *Keenan v. Macy's, Inc.*, 2010 WL 3167731, at *2 (S.D.N.Y. Aug. 9, 2010)("When a federal court examines the propriety of a removal, it must evaluate the existence of the amount in controversy, like any jurisdictional fact, on the basis of the pleadings, viewed at the time when the defendant files the notice of removal.") (internal quotation marks and citation omitted). And, as shown, the record at this stage permits removal under the complete preemption doctrine.[7]

### III.    YP's Motion for Summary Judgment

#### A. Legal Standard

"Summary judgment is appropriate only if 'the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.'" *Tolan v. Cotton,* 134 S.Ct. 1861, 1866 (2014) (quoting Fed. R. Civ. Pro. 56(a)). "In making that determination, a court must view the evidence in the light most favorable to the opposing party." *Id.* (quotation marks omitted). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25 (1986). If the moving party carries its burden, "the opposing party must come forward with

---

[7] Although I do not rely on this point in determining jurisdiction, I also note that it would be unfair to allow the Labor Commissioner – who declined the opportunity either to submit evidence in the record to oppose summary judgment or even to submit an affidavit asserting that it was unable to present such evidence, *see* Fed. R. Evid. 56(d) – to resist the defendant's preemption or summary judgment arguments on the basis of a vague assertion that further factual development was needed.

specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.,* 654 F.3d 347, 358 (2d Cir. 2011).

### B. Exhaustion of CBA Remedies

Before suing in federal district court, a party to a CBA raising claims covered by grievance procedures "must exhaust [the] grievance procedures provided by the relevant [CBA]." *Dougherty v. Am. Tel. & Tel. Co.*, 902 F.2d 201, 203 (2d Cir. 1990). Nonetheless, a plaintiff may file suit "despite his failure to exhaust fully his contractual remedies: (1) when the employer repudiates the private grievance machinery; (2) if the union breaches its duty of fair representation; or (3) where the administrative remedies would be wholly futile." *Schum v. S. Buffalo Ry. Co.*, 496 F.2d 328, 330 (2d Cir. 1974); *accord Vera v. Saks & Co.*, 208 Fed. Appx. 66, 68 (2d Cir. 2006).

The complaint does not allege, and nothing in the summary judgment record suggests, that the former YP employees whom the Commissioner represents have exhausted the CBA's grievance procedures or that any of the above-enumerated bases to excuse exhaustion apply. And the broad language of the CBA's grievance and arbitration provisions easily encompasses the claims asserted by the Labor Commissioner on behalf of the two former employees.[8] The CBA subjects to the grievance procedure "differences ari[sing] between the company and any of its employees…as to the application, interpretation and administration of matters subject to the provisions of this Contract." (ECF No. 7 at 43); (*see also id.* at 49)(the arbitration procedures apply to disputes pertaining to "a. the true intent and meaning of any specific provision or provisions [of the CBA]…b. the application of any provision or provisions thereof to any

---

[8] The Commissioner, who is seeking to vindicate the former employees' contractual rights under the CBA, makes no argument that the grievance and arbitration provisions do not apply because he is not a party to the CBA.

employee or group of employees, and grievances arising from such application…"). As shown, the claims asserted in the complaint raise a "difference[] …as to the application [and] interpretation" of the CBA. And even if the complaint asserted rights arising from an independent source of state law – as the Labor Commissioner contends – it would still raise a "difference…as to…administration of matters subject to the [CBA]," namely, commissions. It is plain, therefore, that the claims in the complaint fall within the grievance and arbitration provisions of the CBA. *See Wu v. Chang's Garden of Storrs, LLC*, No. 08–CV–746, 2009 WL 3769109, at *4 (D. Conn. Nov. 10, 2009)("[A] plaintiff subject to a collective bargaining agreement must exhaust all administrative remedies provided by contract prior to bringing a claim pursuant to [Conn. Gen. Stat.] § 31-72.").

The Labor Commissioner invokes Conn. Gen. Stat. § 31-51bb, which provides that "[n]o employee shall be denied the right to pursue, in a court of competent jurisdiction, a cause of action arising under the state or federal Constitution or under a state statute solely because the employee is covered by a collective bargaining agreement." The same statute also provides, however, that "[n]othing in this section shall be construed to give an employee the right to pursue a cause of action in a court of competent jurisdiction for breach of any provision of a collective bargaining agreement or other claims dependent upon the provisions of a collective bargaining agreement." Conn. Gen. Stat. § 31-51bb. This statute would not exempt the Labor Commissioner's claims from the CBA's grievance and arbitration provisions even if those claims were deemed to "aris[e] … under a state statute," because, as shown, the claims are "dependent upon the provisions of a collective bargaining agreement."

Finally, the Labor Commissioner's suggestion that, notwithstanding the broad language of the grievance and arbitration provisions, exhaustion does not apply because the CBA does not

include a "clear and unmistakable waiver" of the right to pursue statutory wage claims in court is not persuasive. As shown, this case involves a "statutory wage claim" only in the bare sense that Conn. Gen. Stat. § 31-72 provides a remedy for violations of the CBA itself. It would make little sense to exempt a statutory remedy aimed at enforcing rights set forth in a contract from the procedural requirements of the same contract. [9]

Because the claims in the complaint must be exhausted and have not been, YP is entitled to summary judgment on exhaustion grounds.

## IV. Conclusion

For the foregoing reasons, the Court DENIES The Labor Commissioner's motion to remand the case to state court, GRANTS YP's motion for summary judgment, and DENIES as moot YP's motion to dismiss. The Clerk is directed to close this case.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:      Hartford, Connecticut
            March 1, 2017

---

[9] The cases cited by the Labor Commissioner on this point are plainly distinguishable. *See, e.g.*, *Manning v. Boston Medical Center Corp.*, 725 F.3d 34, 51-52 (1st Cir. 2013)(holding that plaintiffs' FLSA claims were not subject to the exhaustion requirement under CBA because "rights conferred by Congress are conceptually distinct from those created by private agreement, and there is no authority for the proposition that rights under the FLSA merge into contractual ones whenever the two overlap"(citation and internal quotation marks omitted)); *Vasserman v. Henry Mayo Newhall Mem. Hospital*, 65 F.Supp.3d 932, 964 (C.D. Cal. 2014)(where none of plaintiff's state-law claims were preempted by section 301 of the LMRA, court rejected the defendant's argument that the "grievance and arbitration procedures set forth in the CBA raise additional issues of CBA interpretation" warranting preemption).